CARNEY, Justice.
I. INTRODUCTION
An inmate representing himself sued the prison superintendent and chaplain for violating his religious rights by providing an inadequate halal diet, banning scented prayer oils, and not allowing him to have additional religious texts in his cell beyond the prison's limit. He claimed these actions violated the Equal Protection Clause of both the Alaska Constitution and the federal Constitution, and the federal Religious Land Use and Institutionalized Persons Act (RLUIPA). The inmate also sought reimbursement for scented oils that the prison had destroyed. The superior court granted the prison officials' motion for summary judgment and dismissed all of the inmate's claims.
We reverse summary judgment on the inmate's RLUIPA claim regarding the halal diet because the inmate did not receive adequate guidance on how to file affidavits in opposition to the summary judgment motion. We reverse summary judgment on the RLUIPA claim regarding scented oils because the prison officials failed to satisfy *741 their burden of proving that banning such oils was the least restrictive means to address their substantial interest in maintaining prison security and health. We affirm the dismissal of the inmate's claims regarding the religious book limit because the issue is not yet ripe. And we vacate the award of attorney's fees and costs.[1]
II. FACTS AND PROCEEDINGS
Raymond Leahy is a Muslim inmate at Goose Creek Correctional Center (Goose Creek) in Wasilla. He observes Islam's dietary restrictions (called "halal") and incorporates scented prayer oils in his daily prayers. To further his religious studies he requested additional religious texts above the number generally allowed per inmate.
Leahy first requested a diet that included halal or kosher meat in April 2013.[2] Leahy had been receiving a vegetarian diet, but asserted that it caused him gastrointestinal distress. Goose Creek served vegan or vegetarian meals to both Muslim and Jewish inmates due to the expense and challenges of providing a halal or kosher diet.[3]
Leahy claims to have used scented oils in his daily prayers until April 2014. He asserts that unscented prayer oil does not serve his religious needs because the scent is an important component of his prayers. But in April 2014 Goose Creek banned scented prayer oils following documented health concerns. Leahy objected to the ban and requested that his oils be stored until his objections were resolved, but Goose Creek disposed of them in December. The disposed oils cost Leahy a total of $65.70.
In April and May of 2014, respectively, Leahy filed grievances after his requests for a halal meat diet and an exception to Goose Creek's ban on scented prayer oils were denied. After the grievances were denied, he submitted administrative appeals which were also denied.
A. The First Complaint
After he was unable to convince Goose Creek to grant him access to halal meat or scented oils, Leahy filed a complaint in superior court in December 2014[4] for declaratory judgment, injunctive relief, and damages against John Conant, the Goose Creek superintendent, and James Duncan, the Department of Corrections' statewide Chaplaincy Coordinator (the officials). Leahy argued that they violated his rights under RLUIPA by placing a substantial burden on his religious exercise by denying his request for a halal meat diet and banning scented prayer oil,[5] and that the officials' actions also violated article I, sections 1 and 4 of the Alaska Constitution.[6]
Goose Creek began serving halal/kosher meat meals at about the same time that Leahy filed his complaint. But Leahy objected to the quality and nutritional value of the meals. Leahy claimed that around the same time, Goose Creek introduced pork for the first time into its kitchen. Islamic law considers pork to be "haram" or unlawful; Leahy was concerned that his meals were being contaminated by their preparation in the same kitchen.
B. The Second Complaint
A month after filing his first complaint Leahy filed a second one, asserting that his religious rights were being violated by Goose Creek's limit on religious books and its ban and disposal of scented prayer oils he had already received approval to purchase. He argued that, despite Goose Creek's limit of *742 11 publications per inmate, he should be allowed to possess ten religious books and ten religious magazines in his cell.
In September 2015 Conant granted Leahy an exception to the scented oil ban, allowing him to store scented prayer oils in the chaplain's closet and check them out for prayers in his cell. But in July 2016, after reports of allergic reactions to the oils by inmates and staff, Conant reinstated the total ban against scented oils. Goose Creek continues to allow the use of unscented prayer oils; the oils are stored and used only in the chapel.
C. Summary Judgment
The officials moved for summary judgment, arguing that neither the Goose Creek halal diet nor the prayer oil policy violated RLUIPA, that the diet did not violate Leahy's equal protection rights, and that the book limitation policy did not violate either RLUIPA or Leahy's equal protection rights.
Leahy filed an opposition to summary judgment the same month. He asserted that he had never previously been informed of Goose Creek's policy allowing inmates only five books, five magazines, and one religious text in their cells or that he needed to fill out a Religious Accommodation Request Form if he wanted an exception from the policy. Leahy also asserted that he would not fill out the required form because he wanted a "fluid" book list that was not determined by the officials' judgment of what was religiously appropriate. In response to the officials' argument that they were entitled to summary judgment with regard to the ban on scented prayer oils, Leahy proposed less restrictive alternatives. He suggested permitting only "milder" scents less likely to irritate others, allowing only one ounce to be stored in an inmate's cell, or having all scented oils stored in the chaplain's office and checked out for use in the chapel. Regarding the halal diet, Leahy disagreed with the facts as the officials presented them and argued that the halal diet rarely had meat, that fruit was unnecessarily exposed to potential contamination, and that the actual menu differed from that on which Goose Creek based its nutritional claims. Leahy did not submit any affidavits with his opposition.
The officials replied to Leahy's opposition. Leahy filed a response to their reply. The officials moved to strike the response because it was not permitted by the rules of civil procedure; the court granted the motion. The court also granted the officials' motion for summary judgment and dismissed the case with prejudice.
Leahy then filed a motion to reconsider the grant of summary judgment. In his motion he included new facts concerning another religious group's use of scented prayer oils at Goose Creek. The officials moved for entry of final judgment. The court denied Leahy's motion to reconsider and entered final judgment in favor of the officials. The court's order stated that "the claims have either been agreed to be moot or [Leahy] did not raise genuine disputes of material facts and [the officials were] entitled to judgment as a matter of law." The court also noted that Leahy's attempt to present new evidence in his motion to reconsider was not appropriate. Following the superior court's final judgment Goose Creek paid Leahy $65.70 for the prayer oils which it had destroyed.
Leahy appeals.
III. STANDARD OF REVIEW
"We review for abuse of discretion 'decisions about guidance to a pro se litigant.' "[7] Abuse of discretion is found " 'when a party has been deprived of a substantial right or seriously prejudiced by the [trial] court's ruling.' We consider 'the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion.' "[8] We hold self-represented litigants to a "less stringent" standard than lawyers; so long as the essence of the self-represented litigant's argument can be easily discerned from the briefing, *743 and the opposing party would not be prejudiced by its consideration, it should be considered.[9]
"We review a grant of summary judgment de novo"[10] and "view the facts in the light most favorable to the non-moving party."[11] "Questions of ripeness are reviewed de novo."[12]
IV. DISCUSSION
Leahy argues that the superior court abused its discretion by granting summary judgment to the officials without first providing him necessary guidance about how to present facts in support of his claims. He argues that it also abused its discretion by not adequately considering the facts that he did present. We agree he received insufficient guidance on how to file affidavits in support of his opposition to summary judgment and we therefore reverse summary judgment on his RLUIPA claim regarding an inadequate halal diet. We also reverse summary judgment on his RLUIPA claim regarding the ban on scented prayer oils because the officials did not demonstrate that a complete ban on such oils was the least restrictive means of achieving Goose Creek's security and safety interests. We affirm the dismissal of Leahy's claims regarding the limit on religious books because it is not ripe.
A. Leahy Received Insufficient Guidance From The Superior Court On Filing Affidavits.
Self-represented litigants are given "considerable leeway" when following procedural requirements.[13] " '[T]he trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish.' But judges must be careful to maintain their impartiality; they therefore may not act as advocates for pro se litigants on substantive legal issues."[14] What the litigant is attempting to accomplish must be obvious. Judges have a heightened duty to advise self-represented litigants of the importance of submitting affidavits or other evidence to preclude summary judgment, due to its consequences.[15] In determining how much guidance the court should provide, we have noted the even greater disadvantage faced by self-represented litigants who are also incarcerated.[16]
The superior court should have advised Leahy that he needed to submit affidavits when he opposed the officials' summary judgment motion.[17] Although Leahy filed an opposition to summary judgment, it did not satisfy Alaska Civil Rule 56(c) 's requirement for supporting materials - including depositions, answers to interrogatories, or affidavits - to show a "genuine issue as to any material fact."[18] His need for procedural guidance was made more apparent when he filed a response to the officials' reply and further when he attempted to introduce new evidence in a motion for reconsideration.
Leahy's response put the superior court on notice of his "obvious attempt" to obtain supporting materials.[19] He detailed his attempts *744 to obtain affidavits and other documentary evidence from Goose Creek's food service manager and its nutrition consultant to refute facts asserted in the officials' summary judgment motion. Leahy specifically noted that his discovery request was denied by Goose Creek's attorney because "the request wasn't proper because [he] asked [for] it in the form of an affidavit." Leahy was therefore unable to obtain affidavits to support his claim that there were issues of material fact.
Although Leahy filed his response months before the court entered final judgment, there is no indication in the record that the court made any attempt to inform Leahy how to properly file an affidavit or a motion to compel discovery during that time. The affidavits that Leahy did file in support of his opposition to the officials' motion to strike his response to their reply - also filed before the court entered final judgment - were his own statements and were used in nontraditional manners, suggesting confusion as to an affidavit's purpose.[20] It was an abuse of discretion not to provide some guidance to Leahy before granting the officials' summary judgment motion.
B. The Failure To Provide Guidance Was Not Harmless.
Summary judgment against a self-represented litigant must be reversed and remanded if the superior court's failure to provide guidance was harmful error.[21] Failing to advise Leahy how to properly file affidavits was not harmless if the affidavits could have shown a "genuine issue as to any material fact."[22] Leahy had tried to obtain affidavits and documents providing information on the portions of food served, acceptable substitutes, greater detail on the special diet menus; the procedure for handling, storing, and preparing halal foods; and the nutrients contained in the foods in the amount served. Had Leahy been informed on how to file affidavits, he might have established an issue of material fact as to the nutritional adequacy of the halal meals.
Under RLUIPA "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden is the least restrictive means of furthering a compelling government interest.[23] Introducing facts about the nutritional inadequacy of Goose Creek's halal meals may have created an issue of material fact sufficient to meet Alaska's lenient standard[24] to overcome summary judgment and required the court to determine whether the diet substantially burdened Leahy's religious practice. Leahy claimed that the vegetarian diet Goose Creek provided caused him the type of "adverse health effects from a prison diet [that] can be relevant to the substantial burden inquiry."[25] Those health effects presented "a factual issue for the [superior] court to resolve."[26] The superior court's failure to inform Leahy how to file an affidavit prevented him from doing what he was clearly trying to accomplish - to present the court with a genuine issue of material fact.[27] Because this failure was not harmless, we reverse summary judgment on Leahy's RLUIPA claim relating to the halal diet.[28]
*745 C. The Officials Failed To Carry Their Burden To Show That The Ban On Scented Oils Was The Least Restrictive Means Of Achieving The Compelling State Interest.
A successful motion for summary judgment requires the moving party to demonstrate through admissible evidence "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[29] "Once the moving party has made that showing, the burden shifts to the non-moving party 'to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' "[30] "Even where affidavits have not been submitted, the trial court still has a duty to consider the evidence referred to by the party opposing summary judgment."[31] Civil Rule 56 requires only " 'a showing that a genuine issue of material fact exists to be litigated, and not a showing that a party will ultimately prevail' at trial."[32] "Alaska's summary judgment standard does not allow trial courts, on the limited evidence presented at the summary judgment stage, to make trial-like credibility determinations, conduct trial-like evidence weighing, or decide whether a non-moving party has proved its case."[33]
RLUIPA prohibits the government from imposing a substantial burden on an inmate's religious exercise, even by a generally applicable rule, unless the government demonstrates that the burden is the least restrictive means of furthering a compelling government interest.[34] The Ninth Circuit has "noted that a burden is substantial under RLUIPA when the state 'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.' "[35] As the party moving for summary judgment, the officials were required to present a prima facie case that no genuine issues of material fact existed. That showing required them to demonstrate that the scented oil ban did not impose a substantial burden on Leahy's religious exercise, or that if it did, then the ban furthered a compelling government interest and was the least restrictive means to further that interest. Until they did so, Leahy had no burden to counter with contradictory evidence.[36]
The superior court found that the ban on scented oils was a substantial burden on Leahy's religious exercise in violation of RLUIPA.[37] The court also found that Goose Creek had a compelling interest in health, safety, and security that justified the burden. But the court did not consider whether, and Goose Creek did not present any evidence that, the ban was the least restrictive means to achieve its safety and security interests.[38]
The court's finding that the ban placed a substantial burden on Leahy's religious rights required the officials to show that banning all scented oils was the least restrictive means of furthering the recognized *746 government interests.[39] The United States Supreme Court has held that " '[t]he least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].' "[40] If a less restrictive means is available, the government must use it.[41] Summary judgment was only proper if there were no genuine issues of material fact and the officials demonstrated that Goose Creek had used the least restrictive means to address its compelling state interest.
But Goose Creek's banning of all scented prayer oils failed to meet the "exceptionally demanding" standard established by the Supreme Court.[42] Goose Creek based its decision to ban all scented oils and to allow only unscented ones on staff determinations that the scented oils "caused inmates and staff to have allergic reactions" and "could mask smells from marijuana or other prohibited substances." While Goose Creek had tried some alternative approaches without success, the officials neither addressed Leahy's proposed alternatives nor fully explained why an exception for Leahy would compromise these interests. It was the superior court that specifically noted that one of Leahy's proposed alternatives, allowing only milder scented oils, "potentially ... could resolve the concerns of allergic reactions."
This potential resolution presented an issue of material fact. And Goose Creek had previously been willing to accommodate Leahy by storing scented oils in the chaplain's office, but instituted the total ban without fully explaining why its previous accommodation was no longer an option.[43] Absent any explanation or even acknowledgment of Leahy's proposed alternatives to completely banning scented oils, Goose Creek did not meet its burden of proving for purposes of summary judgment that it used the least restrictive means available. It was error to grant summary judgment to the officials on Leahy's RLUIPA claim regarding the scented oils.[44] We therefore reverse the superior court's grant of summary judgment that was in favor of the officials on this issue.
D. Leahy's Challenge To The Book Limit Is Not Ripe.
Leahy claims Goose Creek unlawfully denied him religious texts. But his claim is not ripe. As the officials noted in an affidavit, accommodations are available to inmates who seek religious exemptions from Goose Creek's limit on books in cells. Goose Creek has provided Leahy with a route, and a specific form,[45] to request accommodation of his religious needs. Leahy has not sought such an accommodation. "The ripeness doctrine requires a plaintiff to claim that either a legal injury has been suffered or that one will be suffered in the future."[46] Unless and until Goose Creek denies Leahy's request for *747 accommodation, he does not have a legal claim and the issue is not ripe for decision. We therefore dismiss Leahy's RLUIPA claim regarding religious books.
E. The Award Of Attorney's Fees And Costs Must Be Vacated.
Alaska Civil Rule 79 provides that "the prevailing party is entitled to recover costs ... that were necessarily incurred in the action."[47] "[T]he prevailing party is the one who successfully prosecuted or defended the action and prevailed on the main issue."[48] Because we reverse the grant of summary judgment on Leahy's halal diet and scented prayer oil claims, no party has yet prevailed on those issues. Consequently we vacate the award of attorney's fees and costs against Leahy.
V. CONCLUSION
We REVERSE the superior court's order granting summary judgment on Leahy's halal diet and scented prayer oil claims. We AFFIRM the superior court's order dismissing the religious books claim. We VACATE the award of attorney's fees and costs.

Because we reverse summary judgment on other grounds, we need not reach the inmate's constitutional claims.

Leahy proposed that Goose Creek provide kosher meats as an acceptable alternative to halal meats.

According to Goose Creek's superintendent, the kosher diet with meat cost $8,551.95 per inmate per year, compared to $1,478.25 for the standard diet.

Leahy signed and mailed his first complaint to the court on August 26, 2014, before the halal meals began including meat. But his complaint was not logged as filed by the court until December 1, 2014.

See 42 U.S.C. § 2000cc-1(a) (2012).

See Alaska Const. art. I, §§ 1 (inherent rights), 4 (freedom of religion).

Greenway v. Heathcott , 294 P.3d 1056, 1062 (Alaska 2013) (quoting Shooshanian v. Dire , 237 P.3d 618, 622 (Alaska 2010) ).

Id. (first quoting Azimi v. Johns , 254 P.3d 1054, 1059 (Alaska 2011) ; then quoting Bigley v. Alaska Psychiatric Inst. , 208 P.3d 168, 183 (Alaska 2009) ).

Adkins v. Stansel , 204 P.3d 1031, 1033 (Alaska 2009).

Stavenjord v. Schmidt , 344 P.3d 826, 830 (Alaska 2015).

Olson v. City of Hooper Bay , 251 P.3d 1024, 1030 (Alaska 2011) (quoting McCormick v. Reliance Ins. Co. , 46 P.3d 1009, 1011 (Alaska 2002) ).

RBG Bush Planes, LLC v. Kirk , 340 P.3d 1056, 1060 (Alaska 2015).

Greenway v. Heathcott , 294 P.3d 1056, 1071 (Alaska 2013).

Rae v. State, Dep't of Corr. , 407 P.3d 474, 479 (Alaska 2017) (quoting Breck v. Ulmer , 745 P.2d 66, 75 (Alaska 1987) (internal citation omitted)).

See Breck , 745 P.2d at 75 (finding judge should have informed self-represented litigant "of the necessity of submitting affidavits to preclude summary judgment").

See Bauman v. State, Div. of Family &Youth Servs. , 768 P.2d 1097, 1098-99 (Alaska 1989).

See Breck , 745 P.2d at 75 (finding error, although harmless, where judge should have informed self-represented litigant).

Alaska R. Civ. P. 56(c).

See Shooshanian v. Dire , 237 P.3d 618, 624 (Alaska 2010) ("When a pro se litigant is 'obviously attempting to accomplish' an action, the trial court should inform the litigant of the proper procedure for that action." (quoting Breck , 745 P.2d at 75 )).

Leahy used affidavits to argue that the officials' discovery was "fraught with inaccuracies," to explain what he "deduce[d]" about Goose Creek's meals, to inform the court when filings were mailed to him, to inform the court he served his complaint, and to amend defective service.

See Breck , 745 P.2d at 75.

Alaska R. Civ. P. 56(c) (requirements for summary judgment motion).

42 U.S.C. § 2000cc-1(a) (2012).

See Christensen v. Alaska Sales & Serv., Inc. , 335 P.3d 514, 520 (Alaska 2014) ("We reiterate that ours is a 'lenient standard for withstanding summary judgment.' " (quoting Shaffer v. Bellows , 260 P.3d 1064, 1069 (Alaska 2011) )).

Shakur v. Schriro , 514 F.3d 878, 889 (9th Cir. 2008).

Id.

Alaska R. Civ. P. 56(c).

Because nothing in the record suggests that procedural guidance from the court would have led to additional evidence on either the scented oils or religious books claims, it was harmless error as to those claims.

Alaska R. Civ. P. 56(c) ; see Christensen , 335 P.3d at 517.

Christensen , 335 P.3d at 517 (quoting State, Dep't of Highways v. Green , 586 P.2d 595, 606 n.32 (Alaska 1978) ).

Breck v. Ulmer , 745 P.2d 66, 75 (Alaska 1987).

Christensen , 335 P.3d at 519 (quoting Lockwood v. Geico Gen. Ins. Co. , 323 P.3d 691, 696 (Alaska 2014) ).

Id. at 520 (internal citation omitted).

42 U.S.C. § 2000cc-1(a) (2012).

Shakur v. Schriro , 514 F.3d 878, 888 (9th Cir. 2008) (alteration in original) (quoting Warsoldier v. Woodford , 418 F.3d 989, 995 (9th Cir. 2005) ).

See Stavenjord v. Schmidt , 344 P.3d 826, 831 (Alaska 2015) (placing initial burden on moving party).

See id. at 832 ("The prima facie elements of a RLUIPA claim are the 'wish[ ] to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government.' " (alteration in original) (quoting Abdulhaseeb v. Calbone , 600 F.3d 1301, 1312 (10th Cir. 2010) )).

The court did consider whether it was the least restrictive means to address health concerns, and found that Leahy's proposal to use different kinds of scented oil "could resolve the concerns of allergic reactions."

See Holt v. Hobbs , 574 U.S. 352, 135 S. Ct. 853, 863, 190 L.Ed.2d 747 (2015) ("RLUIPA requires us to 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." (alteration in original) (internal quotation marks omitted) (quoting Burwell v. Hobby Lobby Stores, Inc. , 573 U.S. 682, 726-27, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014) )).

Id. at 864 (alterations in original) (quoting Hobby Lobby , 573 U.S. at 728, 134 S.Ct. 2751 ).

Id.

See id. at 863-64, 866 (finding specific ban on half-inch beard "hard to take seriously" when prison officials allowed - subject to search - quarter-inch beards, longer head hair, shoes, and clothing, but asserted half-inch beards threatened prison's security interest).

Goose Creek had previously said the security risk of scented oils masking the smell of marijuana would only be an issue if the oils were allowed in inmates' cells, and thus it had allowed oils to be stored in the chaplain's closet.

We affirm the superior court's finding that Leahy's claims for restitution for his destroyed scented oils is moot because Goose Creek reimbursed him for the oils.

See Religious Accommodation Request , STATE OF ALASKA DEP'T OF CORR. , Form 816.01a (2014), available at http://www.correct.state.ak.us/pnp/pdf/816.01a.pdf.

Brause v. State, Dep't of Health & Soc. Servs. , 21 P.3d 357, 359 (Alaska 2001).

Alaska R. Civ. P. 79(a).

Matanuska Elec. Ass'n v. Rewire the Bd. , 36 P.3d 685, 690 (Alaska 2001) (citation omitted).