NOTICE
*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| HAJJAH DIN, f/k/a Raymond Leahy, ) | |
| ) | Supreme Court No. S-18095 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-14-11007 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF CORRECTIONS and EARL ) | |
| HOUSER, in an official capacity, ) | No. 1952 – February 22, 2023 |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Howard W. Anderson III, Howard W. Anderson III, LLC, Pendleton, South Carolina, for Appellant. Anna L. Marquez, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

An inmate appeals a summary judgment decision dismissing claims he brought against the State for its denial of requests he made based on exercising his religious beliefs. Because we conclude that genuine issues of material fact exist, we vacate entry of judgment and remand for further proceedings.

---

\*        Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

### A.    Uncontested Facts

Hajjah Din is a practicing Muslim incarcerated at Goose Creek Correctional Facility.  Din holds religious beliefs requiring that he pray five times daily using scented prayer oils and that he eat halal meats as part of his diet.[1]  The Department of Corrections (DOC) does not deny that Din sincerely holds these religious beliefs.

#### 1.    Scented prayer oils

At other DOC facilities, Din had been permitted to keep small quantities of scented oils in his cell.  DOC initially allowed Din to keep scented oils at Goose Creek but required that he store them securely with the chaplain and check them out for use.  In 2014 DOC banned scented oils at all facilities because of two reported allergic reactions to scented oils.  In 2015 DOC granted Din an exception to again store scented prayer oils with the chaplain and check them out for use.  But in 2016 DOC said that a staff member had experienced an allergic reaction to Din's scented oils and reinstated the scented oil ban.  In 2019 DOC revised the scented oil ban at Goose Creek, allowing religious groups to purchase scented oils from a pre-approved vendor and store them with the chaplain.  Under the policies in place relevant to this appeal, religious groups are permitted to use scented oils for weekly outdoor congregate religious activities and must wash off the scented oils before reentering the facility.

---

[1]    *Halal*, AMERICAN HERITAGE DICTIONARY (5th ed. 2016) ("Of or being meat from animals slaughtered in the manner prescribed by the [code of law based on the Koran]."); *Kosher*, AMERICAN HERITAGE DICTIONARY (5th ed. 2016) ("*Judaism . . .* [c]onforming to dietary laws; ritually pure . . . ."); *see Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019) ("[M]any Jewish and Muslim inmates would find a nutritionally adequate vegetarian diet that otherwise satisfies kosher standards to be fully compatible with their beliefs . . . . Some Muslim scholars support [an] interpretation [that a halal diet includes meat], and the Imam employed by the DOC agreed that [the] view is 'a valid opinion' shared by some other Muslims . . . .").

### 2.     Halal diet

When Goose Creek opened in 2012, DOC provided vegetarian or vegan meals for inmates claiming a religious need to follow a halal or kosher diet. In 2014 DOC began providing prepackaged halal- and kosher-compliant meals that included meat. In 2018, citing high costs and food waste, DOC stopped providing the prepackaged meals and returned to vegetarian or vegan meals for inmates requesting halal or kosher diets.

### 3.     *Leahy v. Conant*

In 2014 Din, self-represented, brought suit under the Religious Land Use and Institutionalized Persons Act (RLUIPA) against DOC personnel[2] in their personal and official capacities;[3] he also brought claims under 42 U.S.C. § 1983, the Alaska Constitution, and the federal Constitution. He sought a halal-compliant diet, the ability to use scented prayer oils, and $80,000 in damages. The superior court dismissed the personal capacity claims and granted DOC summary judgment on the scented oil and halal diet issues.[4]

---

[2]     At the time, Din was known as Raymond Leahy. John Conant was Goose Creek's superintendent and James Duncan was its chaplaincy coordinator; Duncan later was dismissed from the suit and Earl Houser later became Goose Creek Superintendent, replacing Conant in an official capacity in the litigation. We refer to appellees collectively as "DOC" for simplicity.

[3]     42 U.S.C. § 2000cc-2000cc-5; *see* § 2000cc-2(a) (providing cause of action "against a government"); § 2000cc-5(4) (defining "government" to include "any . . . person acting under color of State law" or "official" of "governmental entity created under the authority of a State").

[4]     *Leahy v. Conant*, 447 P.3d 737, 740 (Alaska 2019).

Din appealed; we reversed and remanded the superior court's summary judgment decision.[5]

**B.      Proceedings Underlying This Appeal**

On remand Din secured legal representation. He then abandoned his § 1983 claims and request for money damages. But the superior court again granted DOC summary judgment.

The superior court decided that DOC's scented oil policy imposed a substantial burden on Din's religious exercise under RLUIPA but concluded that DOC had chosen the least restrictive means of furthering "compelling government interests in security and health of the prison as well as efficient allocation of prison resources." The court reasoned that Din could not keep scented oils in his own cell because of security concerns, that he could not use scented oils indoors because of the potential for odors to linger and travel inside the facility, and that using the scented oils outdoors more frequently than during the weekly congregate prayer service would constitute an administrative burden on prison resources.

The superior court also reasoned that vegetarian meals do not substantially burden Din's religious exercise under RLUIPA because they "do not contain any food that is against [Din's] religion." The court concluded that DOC had chosen the least restrictive means of furthering compelling government interests in "cost-effective food service" and "efficient allocation of prison resources."

After resolving the RLUIPA claims, the superior court turned to Din's constitutional claims. The court dismissed Din's state constitutional claims because "there is a potential [statutory] federal remedy of injunctive relief, therefore there is no

---

[5]      *Id.* at 740-41 (holding that Din had received inadequate guidance as pro se litigant on meal policy claim and that DOC had not shown scented oil ban was least restrictive means to achieve compelling government interest under RLUIPA).

need to determine whether the alleged violations are flagrant." The superior court then awarded DOC attorney's fees related to its defense of these claims.

Din appeals, asserting that genuine issues of material fact precluded summary judgment in DOC's favor and that the superior court should have entered summary judgment in his favor. Din also appeals the dismissal of his state constitutional free exercise claim and the attorney's fees award.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[6] We review grants of summary judgment de novo, viewing facts in the light most favorable to the non-moving party.[7]

## IV.    DISCUSSION

RLUIPA claims have three elements:  "[T]he 'wish[ ] to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government.' "[8] A court analyzing RLUIPA claims may inquire into the sincerity of the claimant's religious beliefs, such as by asking whether the claimant has ulterior motives,[9] but the court may not take into account

---

[6]    Alaska R. Civ. P. 56(c).

[7]    *Leahy*, 447 P.3d at 743.

[8]    *Stavenjord v. Schmidt*, 344 P.3d 826, 832 (Alaska 2015) (second alteration in original) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010)).

[9]    *See id.* at 831 (concluding claimant's asserted sincerity and DOC's asserted ulterior motive created issue of fact precluding summary judgment); *Holt v. Hobbs*, 574 U.S. 352, 369 (2015) ("[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)).

whether the asserted religious belief is shared by a majority of adherents to the religion or is central to the religion.[10] "[A]vailability of alternative means of practicing religion" is not relevant to the "substantial burden" inquiry; under RLUIPA the question is whether a religious exercise is substantially burdened.[11] Once a challenger establishes a substantial burden,[12] the government then must show that the substantial burden was the least restrictive means of furthering a compelling government interest.[13]

## A. Substantially Burdened Religious Exercise

DOC generally has not contested Din's assertions that he sincerely holds beliefs furthered by religious exercises that include using scented prayer oils during daily prayers and having halal meals with meat. RLUIPA does not define "substantial burden," but we have acknowledged at least two definitions. In *Stavenjord v. Schmidt* we said that a substantial burden "prevent[s] participation in conduct motivated by a

---

[10]    *Stavenjord*, 344 P.3d at 831 ("RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " (quoting 42 U.S.C. § 2000cc-5(7)(A))).

[11]    *Holt*, 574 U.S. at 352 (explaining that "the availability of alternative means of practicing religion is a relevant consideration" in First Amendment cases "but RLUIPA provides greater protection"; centering inquiry on petitioner's particular religious exercise of growing a half-inch beard).

[12]    42 U.S.C. § 2000cc-1(a) (providing that government may not impose substantial burden on religious exercise).

[13]    *Id.* § 2000cc-2(b) ("If a plaintiff produces prima facie evidence to support a claim . . . , the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law . . . or government practice that is challenged . . . substantially burdens the plaintiff's exercise of religion.").

sincerely held religious belief."[14] And in *Leahy v. Conant* we said that "a burden is substantial under RLUIPA when the state 'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify . . . behavior and to violate . . . beliefs.' "[15] Under either definition, DOC's policies constitute a substantial burden on Din's religious exercise as a matter of law.

### 1. Scented oils

The superior court concluded that DOC's policy allowing Din to use scented oils only once weekly during outdoor services, although less restrictive than its previous ban on scented oils, "still places a substantial burden on [Din's] exercise of his religion via anointing himself with scented oil during prayer." DOC implicitly concedes this point by focusing only on the least restrictive means test on appeal.

Din does not attend the weekly Islamic congregate service because of religious disagreements with the group, although he acknowledges that nothing prevents him praying outdoors at the same time as the congregate service. We nonetheless agree with the superior court that DOC's policy constitutes a substantial burden; if a total ban on scented oils constituted a substantial burden,[16] allowing Din to use the oils only once during the 35 weekly prayers his beliefs require does little to alleviate that burden.

---

[14] 344 P.3d at 832 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).

[15] 447 P.3d 737, 745 (Alaska 2019) (alteration in original) (quoting *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008)).

[16] *See id.* at 745-46 (accepting superior court's determination that complete ban on scented oils constituted substantial burden and analyzing whether superior court properly assessed DOC's justifications).

### 2. Halal meat

The superior court concluded without much analysis that a vegetarian diet does not substantially burden Din's religious exercise because DOC's vegetarian meals are "nutritionally adequate" and "do not contain any food that is against" Islam. But Din's argument was that denying halal meat in his meals prevents him from eating a diet compliant with his faith and thus "prevent[s] participation in conduct motivated by a sincerely held religious belief."[17]

DOC is required to "adopt procedures for the provision of special meals to accommodate cultural preference or religious, vegetarian, and medical diets."[18] And RLUIPA explicitly instructs courts not to inquire whether a religious exercise is "compelled by, or central to, a system of religious belief."[19] The question is not whether a specific diet is "necessary for the general practice of" a religion, but whether the diet is "motivated by a sincerely held belief."[20]

Because it was uncontested that Din's dietary request was motivated by a sincerely held belief, we conclude that it was error for the superior court to decide that his religious exercise was not substantially burdened by DOC's policy.

---

[17]  *Stavenjord*, 344 P.3d at 832 (quoting *Abdulhaseeb*, 600 F.3d at 1315); *see also id.* at 832 n.18 (citing Derek L. Gaubatz, *RLUIPA at Four: Evaluating the Success and Constitutionality of RLUIPA's Prisoner Provisions*, 28 HARV. J. L. & PUB. POL'Y 501, 558 (2005) ("There has been little dispute in these cases that refusing to provide a diet that accords with the teachings of a prisoner's faith is a substantial burden.")).

[18]  22 Alaska Administrative Code (AAC) 05.115(b); *see Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 793 (5th Cir. 2012) ("[F]ood is an 'essential' benefit given to every prisoner, regardless of religious belief.").

[19]  *See* 42 U.S.C. § 2000cc-5(7)(A) (defining "religious exercise").

[20]  *Stavenjord*, 344 P.3d at 832 (emphasis omitted).

## B. Asserted Compelling Governmental Interests

Once Din established that his religious rights were substantially burdened, DOC was required to show that its policies furthered compelling governmental interests.[21] The superior court concluded that DOC's scented oil policy furthered its interests in "prison security, health of all people in the prison, and efficient allocation of prison resources." Even though the court held that DOC's dietary policy did not burden Din's religious exercise, the court nonetheless concluded that the policy furthered DOC's interest in "efficient allocation of prison resources and cost-effective food service."

Din contends that much of the evidence the superior court relied on to grant DOC summary judgment was hearsay or improper lay testimony.[22] The court did not analyze Din's hearsay objections, noting that "[t]he affiants confirmed their statements were based on personal knowledge" and concluding that the affidavits therefore were "admissible evidence for the purposes of motions for summary judgment." But "opinion testimony and hearsay statements that would be inadmissible at trial are inadmissible in a motion for summary judgment."[23] Summary judgment must be based on admissible evidence.[24]

---

[21] *See* 42 U.S.C. § 2000cc-2(b) (providing that "the government shall bear the burden of persuasion on any element of the claim, except . . . whether the . . . government practice that is challenged . . . substantially burdens the plaintiff's exercise of religion").

[22] *See* Alaska R. Evid. 801-02 (regarding hearsay), 701 (regarding lay opinion).

[23] *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991).

[24] *Stavenjord*, 344 P.3d at 830.

### 1. Scented oils

DOC asserts that allowing Din to keep scented oils in his cell would be a security risk, potentially masking the smell of contraband or helping him to slip out of handcuffs; that scented oils pose a health risk as allergens to prison staff and inmates; and that storing scented oils with the chaplain for use five times daily would be unduly burdensome on prison staff

Din contends that DOC presented no evidence of prayer-oil-related security concerns at any DOC facility. He disputes whether the policy bears any relation to potential allergic reactions, and he points out that DOC offered neither expert testimony nor firsthand testimony from anyone who actually suffered or witnessed such allergic reactions. And he contends there are less restrictive alternatives that would not unduly burden prison personnel.

Prison security is a compelling government interest.[25] But DOC's position that possessing prayer oils is prohibitively dangerous is difficult to reconcile with the fact that it allows inmates to possess "skin cream/oil." Inmate and staff health are also important government interests, and DOC asserts that "even a seemingly mild scent may cause an adverse respiratory reaction." But DOC's position is difficult to reconcile with its policies allowing prisoners to possess other fragranced items, like deodorant, hair spray, and air fresheners. DOC asserts that it would be an undue administrative burden to allow Din to store a personal supply of scented oil with the chaplain because Din prays five times per day and would need to be supervised each time he used the oils. But DOC's position is difficult to reconcile with its statement that Din has access to *un*scented oils stored with the chaplin and presumably requiring the same oversight.

---

[25] *See Ebli v. State, Dep't of Corr.*, 451 P.3d 382, 389-90 (Alaska 2019) (recognizing legitimate interest in prison security and noting "[w]e defer to DOC's determination of what is and is not a security concern . . . .").

DOC also granted Din this accommodation from 2015 to 2016 before banning scented oils because of a staff member's allergic reaction; having revised that ban in 2019, DOC does not explain why the accommodation no longer is administratively possible.[26]

We conclude that genuine issues of material fact preclude summary judgment for either party on whether DOC's scented oil policy furthered its interests.

### 2. Halal meat

DOC asserts that it discontinued the special meals program in place from 2014 to 2018 because too many meals were wasted. Din contends that this is not a compelling reason because *he* does not waste food. DOC also asserts that the estimated additional cost of providing "halal/kosher meals . . . to accommodate all Alaska inmates who claim to need a special halal/kosher diet . . . would exceed $1,000,000 annually." Din contends that this is not a compelling reason because providing *him* pre-packaged halal food would cost DOC approximately $7,700 more than the cost of regular meals, a small sum compared to its massive budget.

Cost management obviously is an important government interest.[27] But Congress contemplated that RLUIPA may "require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise,"[28] and

---

[26] *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 794-95 (5th Cir. 2012) (explaining that past provision of accommodation at previous facility undermines argument that interests in removing it are compelling absent persuasive evidence).

[27] *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005) (recognizing that lawmakers supporting RLUIPA were mindful of cost considerations and limited resources in prison administration).

[28] 42 U.S.C. § 2000cc-3(c).

DOC has a regulatory mandate to accommodate religious meals.[29]  DOC thus must "do more than 'simply utter the magic word[]' 'costs.' "[30]  DOC cites AS 33.30.015, limiting prisoner per capita food spending to 90% of the cost to feed military enlisted personnel, as setting meal costs at no more than $12.51 per day.  DOC states that its regular meals cost $9 per day and that the cost for kosher and halal compliant pre-packaged meals was $30 per day.  DOC also asserts that "prison officials learned that a significant number of pre-packaged meals were being wasted" because "[a]ccording to Goose Creek staff" inmates would choose regular meals over the pre-packaged meals.  But DOC's assertions about military spending, costs, and food waste are supported only by an affidavit from an administrator that cites no source for some numbers and that relays hearsay information without establishing a basis for its admissibility.  Nor does DOC explain why a number representing roughly 0.25% of its $395 million annual budget is cost-prohibitive.[31]

We cannot readily conclude on this record whether the cost and administrative burden of providing religiously compliant meals to Din are compelling concerns.  Genuine issues of material fact remain about whether DOC's meal policies further its interests, and neither party is entitled to summary judgment on this issue.

---

[29]     *See* 22 AAC 05.115(b).

[30]     *United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341, 1348 (11th Cir. 2016) (alteration in original) (quoting *Davila v. Gladden*, 777 F.3d 1198, 1206 (11th Cir. 2015)).

[31]     STATE OF ALASKA OFF. OF MGMT. & BUDGET, ALASKA OPERATING BUDGET FOR FY22: DEPARTMENT SUMMARY (2021), https://omb.alaska.gov/ombfiles/22_budget/FY22Enacted_dept_summary_all_funds_7-7-21.pdf.

### C. Least Restrictive Means

We also evaluate whether DOC met its burden of demonstrating that its policies were the least restrictive means of achieving its interests.[32] DOC must affirmatively "prove that denying the exemption is the least restrictive means of furthering a compelling government interest," not "merely . . . explain why it denied the exemption."[33] DOC need not disprove every conceivable alternative to its chosen policy,[34] but "[i]f a less restrictive means is available, the government must use it."[35]

#### 1. Scented oils

Din suggested options that are less restrictive than DOC's current policy of allowing him to use scented oils only once during 35 weekly prayers. Din suggested being allowed to conduct his five daily prayers outside, even absent congregate services. DOC did not address this possibility, beyond general assertions of administrative burden. Din suggested allowing him to use scented oils "outside during *any* congregate group service" (emphasis in original) where worshipers use scented oils rather than only the weekly Muslim service. DOC did not address this possibility. Din also suggested allowing him to keep small quantities of scented oil in his cell, which he was allowed to do at a different DOC facility.

---

[32] *See Leahy v. Conant*, 447 P.3d 737, 745 (Alaska 2019); 42 U.S.C. § 2000cc-1(a)(2).

[33] *Holt v. Hobbs*, 574 U.S. 352, 364 (2015).

[34] *See id.* at 371-72 (Sotomayor, J., concurring) (explaining government need not "refute every conceivable option to satisfy RLUIPA's least restrictive means requirement" but must respond to proposed alternative schemes suggested by challenger).

[35] *Leahy*, 447 P.3d at 746.

Given that DOC did not meaningfully address Din's suggested alternatives, we conclude that genuine issues of material fact remain about whether its current scented oil policy is the least restrictive means to achieve its asserted compelling interests. Neither party is entitled to summary judgment on this issue.

### 2. Halal meat

Din contends that he suggested a monitoring program that would screen out special meal requests based on food waste or insincerity of religious belief as at least one less restrictive means of furthering DOC's asserted interest in cost-effective food service. DOC dismisses this suggestion, asserting that "[t]he sincerity of one's subjective beliefs is not easily measured." Din also contends that "DOC makes no argument, much less points to record evidence" why it cannot provide at least some meals with halal meat. DOC does not address this contention.

DOC manages a variety of special meals, such as "medical, cultural, religious, vegetarian, [and] vegan" meals. Screening out insincerity is not an exact science,[36] but prisons can implement simple rules governing special meals programs.[37] DOC has not explained why it cannot implement similar rules, and when other prisons

---

[36] *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012) ("A finding of sincerity does not require perfect adherence to beliefs expressed by the inmate, and even the most sincere practitioner may stray from time to time . . . .").

[37] The Florida corrections department's religious meals program, for example, has a 10% rule removing those who wasted 10% of their special meals in a one-month span, and a zero tolerance rule removing those who purchased or consumed foods violating an asserted religious belief. *United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341, 1344-45 (11th Cir. 2016). As Din points out, the Federal Bureau of Prisons also screens religious meal requests. 28 C.F.R. § 548.20.

"offer an accommodation, [DOC] must, at a minimum, offer persuasive reasons why it believes that it must take a different course."[38]

Given that DOC did not adequately address Din's suggested alternatives, we conclude that genuine issues of material fact remain about whether its current meal policy is the least restrictive means to achieve its asserted compelling interests. Again, neither party is entitled to summary judgment on this issue.

### D.     State Constitution Claims

Din also sought injunctive relief under article I, section 4 of the Alaska Constitution, protecting the free exercise of religion. Because we "reverse summary judgment on other grounds, we need not reach [Din's] constitutional claims."[39] But we note that the superior court stated: "Plaintiff is not requesting damages, only injunctive relief[;] . . . there is a potential federal remedy of injunctive relief, therefore there is no need to determine whether the alleged violations are flagrant. Therefore, no State Constitutional claim is properly before this court." But this is the standard for a party seeking *money* damages under the Alaska Constitution, not the standard for seeking injunctive relief.[40] If the court again dismisses Din's RLUIPA claims on remand, it must consider his constitutional claims.

### E.     Attorney's Fees

The superior court awarded DOC attorney's fees. Because genuine issues of material fact preclude summary judgment relating to Din's state law claims, an attorney's fees award was premature. We vacate the award.

---

[38]     *See Holt*, 574 U.S. at 369.

[39]     *See Leahy*, 447 P.3d at 741 n.1.

[40]     *See DeRemer v. Turnbull*, 453 P.3d 193, 198 (Alaska 2019) (explaining that constitutional claims for money damages are not allowed absent flagrant violations and dearth of comparable remedies).

## V. CONCLUSION

We VACATE the superior court's entry of summary judgment and its attorney's fees award, and we REMAND for further proceedings.